# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DERRICK FAHS, ex rel. SCOTT AND SHERRY FAHS,** | : : : | Civil No. 1:15-CV-1108 |
| Plaintiffs | : : | (Judge Jones) |
| v. | : : | (Magistrate Judge Carlson) |
| **THE RED LION AREA SCHOOL DISTRICT,** | : : : : | |
| Defendant | : | |

## MEMORANDUM ORDER

### I.     Factual Background

On June 7, 2015, plaintiffs Scott and Sherry Fahs commenced this action on behalf of their son, Derrick Fahs (collectively, "the Fahses"), by filing an initial complaint alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–797(b), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and state law against the defendant, the Red Lion Area School District ("the School District"), where Derrick Fahs attended school. (Doc. 1.) The Fahses now proceed on an amended complaint, filed on August 3, 2015, which asserts additional federal law claims. (Doc. 8.) Namely, the Fahses allege two new

theories of relief against the School District: retaliation in violation of the ADA and the Rehabilitation Act by citing Scott Fahs for truancy in response to the Fahses' advocacy on Derrick's behalf; and violation of the IDEA for failing to comply with and implement an order issued by a Pennsylvania Special Education Hearing Officer ("the Hearing Officer") on March 9, 2015. (Doc. 8, ¶¶ 34-38, 156-168.) In response to the new claims raised in the amended complaint, the School District noticed depositions and propounded discovery requests seeking Derrick's medical records and other medical information regarding Derrick from his treating physicians. (Doc. 35.) Those requests form the basis of the current discovery dispute.

On December 22, 2016, this matter was referred to the undersigned for pretrial management and resolution of discovery disputes. (Doc. 44.) Two discovery motions are now pending before this court: the Fahses' motions to quash the subpoenas issued by the School District to Drs. Dennis J. Dlugos and Allen S. Nussbaum (Doc. 49); and the Fahses' motion for a protective order or order limiting discovery concerning Derrick's medical records and physician information (Doc. 51). Both motions have been fully briefed and are now ripe for disposition.

For the reasons set forth below, this court will deny in part these motions with respect to the Fahses' IDEA compliance claim because we believe that

Derrick's medical records may be relevant to a determination regarding the adequacy of the school district's efforts to comply with his medical needs.

In their pleadings the plaintiffs have suggested that they may elect to dismiss this IDEA claim rather than provide this requested discovery, and have for this reason asked us to also rule upon whether this information is subject of disclosure with respect to the ADA retaliation claim they have filed. Given this representation by counsel, we believe that the more appropriate course would be to defer judgment regarding whether the defendant would also be entitled to disclosure of this information on the plaintiff's ADA retaliation claim until after the plaintiffs inform us concerning whether they elect to pursue their IDEA compliance claim and provide this discovery.[1]

## II. Discussion

Several basic guiding principles inform our resolution of the instant discovery motions. At the outset, rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of

---

[1] If the plaintiffs elect to pursue this IDEA claim and provide this discovery, any further ruling by this court on alternate theories of disclosure would be moot. In our view, we should only address the disclosure of this information under alternate legal theories after the plaintiffs make an election regarding the claims they intend to pursue, and not before that election has been made.

discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

Although the scope of discovery is to be interpreted broadly, it "is not without limits." Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 149 (M.D. Pa. 2017) (quoting Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996)). Federal Rule of Civil Procedure 26(b)(1), as amended, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). In determining "the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings." Trask v. Olin Corp., 298 F.R.D. 244, 263 (W.D. Pa. 2014). Furthermore, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Thus, "all relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).

Rule 26 also provides a framework by which a party may seek a protective order to limit the scope of discovery. Specifically, Rule 26(c)(1) provides as follows:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for

> good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
>> (A) forbidding the disclosure or discovery;
>>
>> (B) specifying terms, including time and place, for the disclosure or discovery;
>>
>> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>>
>> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>>
>> (E) designating the persons who may be present while the discovery is conducted;
>>
>> (F) requiring that a deposition be sealed and opened only on court order;
>>
>> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
>>
>> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c)(1). In addition, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. If a motion for a protective order is denied in whole or in part, "the court may, on just terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2).

Rule 45 likewise "establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit." First Sealord Sur. v.

Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013). "A subpoena under Rule 45 'must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1).'" First Sealord Sur., 918 F. Supp. 2d at 382 (quoting OMS Invs., Inc. v. Lebanon Seaboard Corp., No. 08–2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)). Rule 45(d)(3)(A) requires a court to quash or modify a subpoena that calls for disclosure of privileged or other protected matter, if no exception or waiver applies. Fed. R. Civ. P. 45(d)(3)(A)(iii). As is the case with the scope of discovery matters in general, decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. R.J. Reynolds Tobacco v. Philip Morris Inc., 29 F. App'x 880, 881 (3d Cir. 2002).

Here, the School District seeks to depose Drs. Nussbaum and Dlugos, Derrick's primary care provider and treating neurologist, respectively. (Doc. 50-1, at 3-13.) The School District further wishes to command Drs. Nussbaum and Dlugos to produce all notes, reports, and any other written materials about Derrick that were created after January of 2011. (Doc. 50-1, at 3-13.) The Fahses oppose the School District's discovery requests, arguing that the requests seek the disclosure of privileged or protected medical information concerning Derrick. (Doc. 50, at 16-17.) Moreover, the Fahses contend that no exception or waiver applies that would permit disclosure of Derrick's medical information because they

7

have narrowly tailored the claims asserted in their amended pleading so as to not put Derrick's medical history at issue. (Doc. 50, at 17.) In the event that their motions are not fully granted, the Fahses further request that this court specify the claim(s) to which Derrick's medical records are relevant and provide the Fahses with the opportunity to withdraw those claims in lieu of producing the records. (Doc. 67, at 7 n.1.)

As a preliminary matter, we first note that the Fahses maintain a privacy interest in protecting Derrick's private medical information. See United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980) ("[M]edical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection. Information about one's body and state of health is matter which the individual is ordinarily entitled to retain within the private enclave where he may lead a private life." (quotation omitted)). "[H]owever, that . . . privacy right in nondisclosure of confidential medical information is far from absolute . . . ." Faison v. Parker, 823 F. Supp. 1198, 1201 (E.D. Pa. 1993).

Congress enacted the Health Insurance Portability and Accountability Act ("HIPAA") in 1996 to set forth protections regulating the disclosure of a patient's private medical records. "HIPAA governs the release of protected health information—individually identified health information transmitted or maintained

8

in any form." In re Asbestos Prod. Liab. Litig. (No. VI), 256 F.R.D. 151, 154 (E.D. Pa. 2009) (citing 45 C.F.R. § 160.103). Under HIPAA,

> A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>
> (A) The covered entity receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>
> (B) The covered entity receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1). Here, the parties do not dispute that the information requested by the School District is protected health information subject to HIPAA, but the School District nonetheless avers that it is willing to negotiate a qualified protective order ("QPO") that meets the requirements of 45 C.F.R. § 164.512(e).

(Doc. 64, at 19, 29-31.) Accordingly, this court does not find that HIPAA's regulations present a bar to the production of Derrick's medical records.[2]

Having discussed the statutory provisions under federal and state law that address the disclosure of medical records, we further note that "the federal common law does not recognize a more general physician-patient privilege." <u>Sarko v. Penn-Del Directory Co.</u>, 170 F.R.D. 127, 131 (E.D. Pa. 1997). Thus, because no express claim of privilege applies, the key determination for this court is whether

---

[2] The Fahses also cite Pennsylvania's physician-patient privilege law, 42 PA. CONS. STAT. ANN. § 5929, as a further basis why this court should refuse to order the production of Derrick's medical records. (Doc. 50, at 16-17.) The statute provides,

> "[n]o physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries."

42 PA. CONS. STAT. ANN. § 5929. However, "[t]hough the Third Circuit has not directly addressed this issue, a majority of courts have concluded that HIPAA does not incorporate state statutes with stricter confidentiality provisions for the purpose of litigation in federal court when jurisdiction is based on a federal question." <u>Williams v. City of Philadelphia</u>, No. CIV.A. 08-1979, 2014 WL 5393988, at *5 (E.D. Pa. Oct. 22, 2014). We agree with the majority view that Pennsylvania's physician-patient privilege statute does not apply to this federal question suit brought in federal court. Moreover, the School District convincingly argues that Pennsylvania's physician-patient privilege statute would not apply here because the statute only protects against disclosures that would tend to "blacken the character of the patient." (Doc. 64, at 19.) The Fahses make no assertion that disclosure of Derrick's medical records would be likely to blacken his character. Pennsylvania's physician-patient privilege law thus does not limit the scope of discovery in this case.

Derrick's medical records are relevant to the claims in this case in light of the factors set forth in Rule 26(b)(1). See Fed. R. Civ. P. 26(b)(1). Although the Fahses retain a privacy interest in Derrick's medical records, as noted above, that interest must be weighed against the School District's right to defend itself fully from the Fahses' claims. See Acquarola v. Boeing Co., No. CIV.A. 03-CV-2486, 2004 WL 540487, at *4 (E.D. Pa. Feb. 26, 2004) (noting that the discoverability of medical records is not simply determined based on whether a plaintiff "put his own physical condition at issue").

The School District argues that Derrick's medical records and testimony from Drs. Dlugos and Nussbaum is essential to their defense against the Fahses' claim that the School District failed to comply with the Hearing Officer's order under the IDEA. (Doc. 64, at 20-24.) As part of their compliance claim, the Fahses assert that the School District failed to complete the appropriate evaluations ordered by the Hearing Officer and provided insufficient information to the evaluators about Derrick's episodes. (Doc. 8, ¶¶ 127-29, 163-168.) The School District argues that it is entitled to review Derrick's medical records and depose his treating physicians in order to determine what evaluations did or did not take place, as well as what was needed for each evaluation. (Doc. 64, at 22.) Indeed, the School District contends that the Fahses essentially hijacked the evaluation process, leaving the School District unable to determine its remaining obligations.

11

(Doc. 64, at 22.) The School District specifically points out the importance of Dr. Dlugos in defending the compliance claim, as the School District contacted Dr. Dlugos for a neurological evaluation of Derrick as part of its compliance efforts, but the Fahses never shared the evaluation itself or the information and medical records that formed the basis for the evaluation. (Doc. 64, at 20-24.) The Fahses responded by clarifying that they do not take issue with the specific neurological evaluation offered by the School District and completed by Dr. Dlugos, and therefore argue that Dr. Dlugos's evaluation and the medical records he relied on are irrelevant to the compliance claim. (Doc. 67, at 18-22.) However, the Fahses' attempt to carve out an exception to their compliance claim in order to insulate themselves from discovery of Derrick's medical records falls short. The fact that Dr. Dlugos was able to successfully complete his neurological evaluation and the steps he took to produce what the plaintiffs apparently regard as a satisfactory evaluation, are all relevant for the purpose of assessing the Fahses' claim that the School District did not provide evaluators with sufficient information. Moreover, the School District contends that Dr. Dlugos' own file may contain the findings necessary to identify any alleged shortcomings in the evaluation process. (Doc. 76, at 11.) Finally, the School District is better positioned to assess the merits of the compliance claim with the benefit of Derrick's medical records because it could

see whether its evaluations proposed or carried out thus far were adequate and responsive to Derrick's needs.

We agree with the School District's contention that Derrick's medical information and the deposition testimony of Drs. Dlugos and Nussbaum is relevant to the School District's defense of the compliance claim. See Hickman v. Taylor, 329 U.S. 495, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession."). Indeed, "[i]t is not for a party to determine, by a unilateral review of documentation, whether information is relevant to the case." Sanchez v. U.S. Airways, Inc., 202 F.R.D. 131, 135 (E.D. Pa. 2001). In the matter at hand, we find that the School District's interest in presenting a full and complete defense to the compliance claim outweighs the Fahses' privacy interest in Derrick's medical records, as the School District's medical discovery requests are proportional to the needs of the case given the disparity in access to this information, the potential for the medical records to aid the School District in its defense to the compliance claim, and the ability to safeguard the Fahses' privacy interest through the implementation of a QPO. Fed. R. Civ. P. 26(b)(1). Moreover, this court reiterates that "[i]nformation within th[e] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). This ruling therefore does nothing to

impede the Fahses' ability to challenge the admissibility at trial of Derrick's medical information that is disclosed in discovery, as well as the deposition testimony of Drs. Dlugos and Nussbaum, by filing a motion *in limine* at a later date.

Having found that the School District is entitled to its requested medical discovery on the basis of the Fahses' compliance claim, we defer ruling at this time on the question of whether the discovery is also relevant to the retaliation claim, a determination which is not necessary in this case until the plaintiffs decide whether they wish to continue to pursue this IDEA compliance claim, something they have suggested that they may elect not to do if they are required to disclose medical information concerning Derrick which might shed light on this compliance issue. Furthermore, although the Fahses request that this court screen all medical records *in camera* prior to ordering their production, we find this step to be unnecessary given that the School District is better positioned to determine which individual medical documents are relevant to its defense of the compliance claim. See, e.g., Hinton v. Dep't of Justice, 844 F.2d 126, 128 (3d Cir. 1988) (noting that in camera review is within the sound discretion of the trial judge because it "may impose a significant burden on the court"). We also note that these records may not be amenable to *in camera* review since one thing that the defendant may seek is confirmation that certain additional medical steps were not deemed necessary by

14

examining and treating physicians. In short, the absence of information—something that cannot be captured through an *in camera* review—may have relevance here. Although the Fahses' motion to quash will thus be denied with respect to their compliance claim, Derrick's medical records should only be disclosed within the confines of an appropriate QPO. Therefore, we order the production of Derrick's medical records subject to the following restrictions on the School District: "[the Fahses'] medical records are to be used solely for the instant litigation; the information from [the Fahses'] medical records is not to be disseminated to individuals not involved in this case; and [the School District] shall return all copies of [the Fahses'] medical records to [them] at the conclusion of this litigation." Lopez v. CSX Transp., Inc., No. CIV.A. 3:14-257, 2015 WL 5971682, at *8 (W.D. Pa. Oct. 14, 2015). The parties are encouraged to memorialize these restrictions in a confidentiality agreement of their own. As a final matter, we will allow the Fahses an opportunity to withdraw their IDEA compliance claim in lieu of disclosing Derrick's medical information. The Fahses shall be granted thirty (30) days from the date of this order to inform the court whether they wish to withdraw their IDEA compliance claim or proceed and produce the requested discovery materials.

An appropriate order follows.

## III. Order

AND NOW, this 16th day of October, 2017, IT IS HEREBY ORDERED that the Fahses' motions to quash the subpoenas served upon Drs. Dennis J. Dlugos and Allen S. Nussbaum (Doc. 49), and for a protective order or order limiting discovery concerning Derrick's medical records (Doc. 51), are DENIED IN PART. These motions are denied with respect to the Fahses' IDEA compliance claim, while the court defers judgment on the question of whether the School District's requested discovery is relevant to the Fahses' retaliation claim. Furthermore, the production of Derrick's medical records shall be subject to the following limitations:

1. Derrick's medical records shall be used solely for the purposes of this litigation;
2. The information contained in the medical records shall not be disclosed to any individual or source not related to this case; and
3. The School District shall return all copies of Derrick's medical records to the Fahses at the conclusion of this litigation.

This order is entered without prejudice to the Fahses' ability to file a later motion *in limine* after the close of discovery contesting the admissibility of these discovery materials. As a final matter, the Fahses are directed to inform the court on or before Wednesday, **November 15, 2017**, whether or not they wish to withdraw their IDEA compliance claim in lieu of complying with this discovery order, so we may determine whether further discovery proceedings are necessary here.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge